IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

◆◆◆

NICHOLAS GASH,

*Plaintiff-Appellant,*

—v.—

ROSALIND FRANKLIN UNIVERSITY, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
NO. 1:23-CV-02054
HONORABLE ELAINE E. BUCKLO

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ANDREW MILTENBERG
TARA J. DAVIS
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

—and—

ELVIS D. GONZALEZ
ELVIS GONZALEZ LTD.
233 South Wacker Drive, #6149
Chicago, Illinois 60606
(312) 558-9779
egonzalez@elvisgonzalezltd.com

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ...............................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ON REPLY .................................................................................. 3

   I.   The Title IX Claim. .................................................................................. 3

     1)   The Public Pressure Created by the 2011 and 2014 Guidance Documents Are Relevant to Gash's Title IX Claim and, when Considered Along with the Procedural Errors Detailed in the Amended Complaint, Plausibly Allege Gender Bias. ...................................................................................................... 3

     2)   The Amended Complaint Identifies a Multitude of Procedural Errors Which, in the Aggregate, Raise a Plausible Inference of Gender Discrimination. ........... 5

        a)   RFU's Improper Extension of Jurisdiction to Off-Campus Conduct Violated Both the 2020 Title IX Regulations and RFU's Policy. ....................... 5

        b)   RFU's Exclusion of Gash from the Hearing During Cross-Examination Supports a Gender Bias Claim. ...................................................................... 10

        c)   The Additional Procedural Errors Described in the Amended Complaint Further Support a Plausible Title IX Claim. ................................................... 13

        d)   *Doe v. Samford University* is Inapposite. .................................................. 18

   II.  The Breach of Contract Claim. ........................................................................ 21

        a)   The Amended Complaint States a Claim for Breach of Contract. ........... 21

        b)   RFU Committed Violations of its Policy. ................................................ 22

CONCLUSION.................................................................................................. 24

CERTIFICATE OF COMPLIANCE ....................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................... 5

*Bosch v. NorthShore Univ. Health Sys.,*
    2019 IL App (1st) 190070, ¶ 45, 155 N.E.3d 486......................... 2, 21, 22

*Bryant v. Gardner,*
    587 F. Supp. 2d 951 (N.D. Ill. 2008) ........................................ 9

*Davis v. Alaska,*
    415 U.S. 308 (1974) .............................................................. 10

*Doe v. Columbia College of Chicago,*
    933 F.3d 849, 858 (7th Cir. 2019)............................................2, 21

*Doe v. Columbia University,*
    831 F.3d 46 (2d Cir. 2016) ..................................................... 4

*Doe v. Loyola Univ. Chicago,*
    No. 18 CV 7335, 2020 WL 406771 (N.D. Ill. Jan. 24, 2020)................ 4

*Doe v. Princeton Univ.,*
    30 F.4th 335 (3d Cir. 2022) .................................................... 19

*Doe v. Purdue Univ.,*
    928 F.3d 652 (7th Cir. 2019) ........................................ 1, 3, 4, 18, 19

*Doe v. Regents of the Univ. of Cal.,*
    23 F.4th 930 (9th Cir. 2022).................................................... 19

*Doe v. Rollins Coll.,*
    77 F.4th 1340 (11th Cir. 2023) ................................................ 18

*Doe v. Samford Univ.,*
    29 F.4th 675 (11th Cir. 2022)......................................... 18, 19, 21

*Doe v. Texas Christian University,*
    601 F. Supp. 3d 78 (N.D. Tex. 2022) ...................................... 1, 8, 9

*Does 1-2 v. Regents of the Univ. of Minnesota,*
    999 F.3d 571 (8th Cir. 2021) .................................................. 19

*Douglas v. Alabama,*
    380 U.S. 415 (1965) .............................................................. 11

*Frederick v. Simpson College,*
    149 F. Supp. 2d 826 (S.D. Iowa 2001)...................................... 13

*I.F. v. Lewisville Indep. Sch. Dist.,*
    915 F.3d 360 (5th Cir. 2019) .................................................. 13

*In re Bill of Lading Transmission and Processing System Patent Litigation,*
    681 F.3d 1323 (Fed. Cir. 2012)................................................ 20

*Kentucky v. Stincer*,
  482 U.S. 730 (1987) ................................................................. 11
*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ................................................................ 20
*Smith v. Healthcare Auth. for Baptist Health*,
  2:20-CV-887-MHT, 2022 WL 857036 (M.D. Ala. Mar. 22, 2022) ........................... 20
*Swanson v. Citibank, N.A.,*
  614 F.3d 400 (7th Cir. 2010) ...................................................... 4
*Waters v. Metro. State Univ.,*
  91 F. Supp. 2d 1287 (D. Minn. 2000), *aff'd,* 52 F. App'x 1 (8th Cir. 2002)............ 13

## **Rules**

20 U.S.C. § 1687 ...................................................................... 6
34 CFR § 106 ...................................................................... 9, 12
34 CFR §106.2(h) ..................................................................... 6
34 CFR §106.45(b) ................................................................... 14
34 CFR §106.45(b)(6)(i) ............................................................. 11
34 CFR §106.45(b)(1)(iii) ........................................................... 14
34 CFR §106.45(b)(1)(iv) ............................................................ 14
34 CFR §106.45(b)(3) ................................................................. 8
34 CFR §106.45(b)(5)(vii) ........................................................... 14

## PRELIMINARY STATEMENT

Plaintiff-Appellant Nicholas Gash ("Plaintiff-Appellant" or "Gash") submits this Reply Brief in further support of his request that this Court reverse the District Court's September 11, 2023 Memorandum Opinion and Order granting Defendants' Motions to Dismiss for failure to state a claim and the September 11, 2023 Final Judgment dismissing the Amended Complaint. (SA 1-18). In their responsive brief, Defendant-Appellees misapprehend the relevance of the 2011 Dear Colleague Letter and 2014 Questions and Answers on Title IX and Sexual Violence to Gash's Title IX claim, asserting that the rescission of such documents render them moot. However, the Seventh Circuit has observed that the pressure imposed on universities as a result of these documents, though not necessarily sufficient on its own to establish gender bias, does provide important contextual information as to why a university might have been motivated to discriminate against accused males. *See Doe v. Purdue Univ.*, 928 F.3d 652, 668 (7th Cir. 2019). When considered along with the particularized facts of this matter as alleged in the Amended Complaint, Gash presents a plausible Title IX claim.

Defendant-Appellees wrongly assert that the District Court appropriately found that Rosalind Franklin University's ("RFU") decision to extend its jurisdiction to off-campus conduct did not suggest gender-based discrimination, despite that such conduct violated both RFU's Policy and the 2020 Title IX Regulations. Defendant-Appellees misconstrue the application of *Doe v. Texas Christian University*, 601 F. Supp. 3d 78, 88 (N.D. Tex. 2022), *appeal dismissed*, No. 22-10505, 2023 WL 3568171 (5th Cir. Jan. 10, 2023), which recognized that a violation of the Title IX regulations

1

can itself be evidence of gender bias, brazenly assert that there was no procedural error when Gash was removed from the hearing during the witness testimony because the female complainant was likewise removed notwithstanding the clear disparate impact of such conduct, wrongly contend that the additional procedural errors outlined in the Amended Complaint are not sufficient indicia of gender bias at the pleading stage, and ignore that a Court's weighing of one proffered non-discriminatory explanation for the defendant's misconduct over another on a Rule 12 motion equates to imposing a probability requirement at the pleading stage, which the Supreme Court has expressly prohibited. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). For all the reasons discussed below and in his Opening Brief, Gash has plausibly alleged a Title IX gender discrimination claim.

As for Gash's breach of contract claim, even if the Court were to apply the "arbitrary, capricious, or made in bad faith" standard expressed in *Doe v. Columbia College of Chicago*, 933 F.3d 849, 858 (7th Cir. 2019), Plaintiff's allegations are sufficient to state a claim for breach of contract at the motion to dismiss stage. As in *Bosch v. NorthShore Univ. Health Sys.,* Plaintiff is not asking the Court to substitute its academic judgment; rather, the Court is being asked to examine whether Defendant-Appellee's disparate treatment of Plaintiff and RFU's failure to follow its own policies state a claim for breach of contract. *See Bosch v. NorthShore Univ. Health Sys.,* 2019 IL App (1st) 190070, ¶ 45, 155 N.E.3d 486, 499. A thorough review of the Amended Complaint confirms that Gash has plausibly alleged a breach of contract claim. The District Court's decision should be reversed.

# ARGUMENT ON REPLY

## I.   The Title IX Claim.

### 1)   The Public Pressure Created by the 2011 and 2014 Guidance Documents Are Relevant to Gash's Title IX Claim and, when Considered Along with the Procedural Errors Detailed in the Amended Complaint, Plausibly Allege Gender Bias.

Defendant-Appellees begin by arguing that the District Court was correct in finding that the pressure created by the 2011 Dear Colleague Letter and 2014 Questions and Answers on Title IX and Sexual Violence (the "Guidance Documents"), when combined with Gash's allegations of procedural flaws in the University's process, were not sufficient to allege a Title IX claim because the Guidance Documents were rescinded long before Gash's process took place, rendering his argument about pressure imposed on RFU administrators by such Guidance Documents moot. (Appellee Brief, p. 5).

This statement misrepresents the District Court's findings, which acknowledged the relevance of the Guidance Documents in deciding a Title IX claim, noting that public pressure provides an important backdrop as to why a university might have been motivated to discriminate against males, and stating "[t]he letter and accompanying pressure gives [the plaintiff] a story about why [the university] might have been motivated to discriminate against males accused of sexual assault." (SA 8, citing *Purdue Univ.*, 928 F.3d at 669). The court further acknowledged that many courts including the Seventh Circuit "have treated the Dear Colleague letter as relevant in evaluating the plausibility of a Title IX claim." (SA 8, *citing Purdue Univ.,*

928 F.3d at 668). Though the pressure placed on educational institutions by the Guidance Documents may not be sufficient on its own to establish a Title IX claim, it is one factor to be considered as part of the totality of the circumstances. *See Doe v. Loyola Univ. Chicago,* No. 18 CV 7335, 2020 WL 406771, at *3 (N.D. Ill. Jan. 24, 2020) ("while asserted pressure resulting from the 2011 Dear Colleague Letter alone is not enough to state a claim that the university acted with bias in this particular case, it is one piece of the puzzle: a piece that Doe is entitled to explore through discovery.") (internal citations omitted).

Although the District Court recognized the relevance of the pressure created by the Guidance Documents, the District Court erred when it nonetheless concluded that the pressure on universities to aggressively respond to sexual misconduct complaints, when combined with the procedural flaws identified by Gash, did not plausibly suggest gender discrimination. (SA 9). The District Court disregarded the extensive evidence offered by Gash which supports his discrimination claim, distinguishing the specific facts of this case from those alleged in *Purdue University*, 928 F.3d 652, and *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). However, there is no set list of facts that must be alleged to overcome a motion to dismiss. At the pleading stage, a plaintiff is only required to plead, not prove, an inference of gender bias. *See Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010)("'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not ... As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the

case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen"); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[t]he plausibility standard is not akin to a probability requirement")(internal quotations omitted). The Amended Complaint meets this burden, requiring reversal of the District Court's decision.

> **2) The Amended Complaint Identifies a Multitude of Procedural Errors Which in the Aggregate, Raise a Plausible Inference of Gender Discrimination.**

In his Amended Complaint, Gash identifies the external pressure created by the Guidance Documents as one factor to be considered when viewing the evidence of discrimination in the aggregate. (A 33, ¶ 36; A 34, ¶ 37; A 61, ¶¶ 205-208). Defendant-Appellees wrongly suggest that the District Court was correct in holding the procedural errors identified by Gash were insufficient to establish gender bias. In his opening brief, Gash points to the various pieces of circumstantial evidence which, in totality, raise a plausible inference of sex discrimination, warranting reversal of the District Court's decision, as discussed further below.

> **a) RFU's Improper Extension of Jurisdiction to Off-Campus Conduct Violated Both the 2020 Title IX Regulations and RFU's Policy.**

The District Court erroneously held that RFU's decision to extend its jurisdiction to off-campus conduct did not suggest gender-based discrimination. (SA 12). While Defendant-Appellees argue in support of this proposition by citing the provisions of the 2020 Title IX Regulations that address when a school has jurisdiction over an off-

campus event, neither the District Court nor the Defendant-Appellees identify how the matter involving Gash falls within those criteria.

The 2020 Title IX Regulations provide insight as to the situations in which a school may exercise jurisdiction over conduct occurring off campus in the commentary, noting: "the statutory and regulatory definitions of program or activity along with the revised language in §106.44(a) clarify that a recipient's Title IX obligations extend to sexual harassment incidents that occur off campus if any of three conditions are met: If the off-campus incident occurs as part of the recipient's "operations" pursuant to 20 U.S.C. 1687 and 34 CFR §106.2(h); if the recipient exercised substantial control over the respondent and the context of alleged sexual harassment that occurred off campus pursuant to §106.44(a); or if a sexual harassment incident occurs at an off-campus building owned or controlled by a student organization officially recognized by a postsecondary institution pursuant to §106.44(a)." *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 85 FR 30026-01.

RFU's Student Handbook similarly provided that its Title IX policy would apply to a formal complaint alleging sexual harassment "that occurred in an education program or activity of the University against the complainant while physically present in the United States," with "education program or activity of the University" defined as "locations, events, or circumstances over which the University exercised substantial control over both the respondent and the context in which the sexual

harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University." (A 45-47, 62-64).

None of the foregoing circumstances were met here, yet RFU arbitrarily extended its jurisdiction to adjudicate the complaint against Gash under its Title IX policy. (A 45-47, 59-60, 62-64). In arguing that this extension was authorized by the 2020 Title IX Regulations, Defendant-Appellees state only that a school must conduct a fact-specific inquiry and consider a range of factors on a case-by-case basis. (Appellee Brief, p. 13). Indeed, the only factor specific to Gash's case that is mentioned by Defendant-Appellees is an erroneous finding made by RFU. In a footnote, Defendant-Appellees cite to the Amended Complaint, stating the University found the complainant had presented "ample and substantial evidence" that Gash's conduct "negatively affected her ability to focus and concentrate on education, and that her grades were negatively impacted" which purportedly was sufficient reason for RFU to extend its jurisdiction to the off-campus alleged misconduct. (A 55, at ¶ 169; Appellee Brief, p. 13). However, as stated in the Amended Complaint, Dr. Parsley's conclusion was flawed, as Jane Roe did not present "ample" or "substantial" evidence that Gash's behavior negatively affected her education. During the hearing, Roe alleged only that her grades suffered when she had to rearrange her schedule to accommodate counseling sessions. (A 55, at ¶¶ 168-169). There is no further discussion as to how RFU exercised "substantial control" over the off-campus conduct, sufficient to bring the matter within the scope of RFU's jurisdiction.

As the complaint filed by Roe concerned conduct alleged to have occurred in Roe's off-campus apartment, in a building that was neither owned nor controlled by RFU, Roe did not claim the alleged harassment occurred in the context of a university education program or activity, and she did not present any evidence demonstrating an adverse impact to her educational experience (A 46-47), RFU had no basis on which to adjudicate the conduct. Notwithstanding, RFU proceeded to investigate and adjudicate the complaint against Gash under Title IX, in violation of the 2020 Title IX regulations and RFU's own conduct policies (A 45-47), raising a plausible inference of gender-discrimination.

Defendant-Appellees next attempt to justify RFU's decision to discipline off-campus conduct over which it had no control, let alone substantial control, by citing to Section 106.45(b)(3) of the 2020 Title IX regulations. (Appellee Brief, p. 14). However, this provision authorizes a school to investigate alleged misconduct occurring off-campus under its code of conduct or another policy when the conduct alleged in the complaint does not fall under Title IX sexual harassment. *See* 34 CFR §106.45(b)(3). That a school may choose to investigate alleged violations under a different school conduct policy is irrelevant. Here, RFU chose to adjudicate the matter against Gash under its Title IX policy and was therefore bound to the mandates of the 2020 Title IX Regulations.

Defendant-Appellees completely miss the mark in arguing that Gash's reliance on *Doe v. Texas Christian University* is misplaced because the jurisdictional issue in that matter related to the consolidation of two incidents. (Appellee Brief, p. 14). As made

clear in his moving brief, Gash cited *Doe v. Texas Christian University* in support of the proposition that a violation of the 2020 Title IX Regulations has itself been deemed indicative of gender bias. *See Texas Christian University,* 601 F. Supp. 3d at 88 (noting that particularly relevant toward establishing a gender bias claim "are procedural irregularities that violate Title IX regulations, which are 'intended to effectuate Title IX's prohibition against sex discrimination'"), *citing Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 85 Fed. Reg. 30,026, (May 19, 2020) (codified at 34 C.F.R. pt. 106).

Defendant-Appellees further remark that *Doe v. Texas Christian University* is distinguishable from the present matter because the alleged errors here "are not substantive and not facially discriminatory." (Appellee Brief, p. 15). Initially, the errors alleged in support of a Title IX claim need not be facially discriminatory to meet the plausibility threshold. *See Bryant v. Gardner*, 587 F. Supp. 2d 951, 964 (N.D. Ill. 2008) ("[b]ecause direct evidence of discriminatory intent is rare, a plaintiff can also rely on circumstantial evidence, which allows the trier of fact to infer intentional discrimination by the decision maker.") (internal quotations omitted). Notwithstanding, several of the errors identified were indeed substantive: the removal of Gash from the hearing during cross-examination, the failure of the Investigator to pursue potentially exculpatory evidence, and the prohibition on Gash's advisor from asking Roe relevant questions during cross-examination, to name a few. (A 52; A 65; A 50-52).

Moreover, RFU's decision finding Gash responsible for sexual assault which he did not commit was facially discriminatory. Specifically, despite the clear evidence which demonstrated that Gash was substantially more intoxicated than Roe on the relevant evening, RFU improperly ascribed the obligation to obtain consent from his partner to Gash, because he was the male. Incredibly, the decision letter entirely omitted the fact that Gash was so intoxicated on the evening in question that he could not recall anything that occurred after leaving the bar in the early morning of November 21, 2021. (A 52-53, ¶¶ 154-155). Yet, RFU still faulted Gash because he could not recall obtaining consent to engage in sexual activity with Roe. *Id*. Under RFU's definition of consent, Gash would not have been capable of consenting to sexual activity with Roe due to his incapacitation level. *Id*. Yet, this was not considered by the hearing panel in reaching their conclusion, demonstrating their gender-biased belief about the role of men and women in sexual encounters. The foregoing raises considerable doubt about the accuracy of RFU's findings and displays a clear instance of gender-biased decision-making on the part of the University.

### b) RFU's Exclusion of Gash from the Hearing During Cross-Examination Supports a Gender Bias Claim.

RFU's decision to exclude Gash from the hearing during the cross-examination of witnesses was a critical procedural error that supports an inference of gender bias. The fact that the female complainant was likewise excluded does not minimize the adverse impact of this procedural error on Gash as the male accused, nor does it negate the existence of gender biased action.

There is no question that the right to cross-examine witnesses is deeply rooted in the constitutional right of an accused in a criminal proceeding "to be confronted with the witnesses against him." *See Davis v. Alaska*, 415 U.S. 308, 315 (1974) ("Confrontation means more than being allowed to confront the witness physically. Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination"), *citing Douglas v. Alabama*, 380 U.S. 415, 418 (1965) (internal quotations omitted). *See also Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (functional purpose of the Confrontation Clause is "ensuring a defendant an opportunity for cross-examination.") Though the instant matter does not involve a criminal proceeding, the same principles apply. Defendant-Appellees cannot genuinely claim that cross-examination is equally as important to the complainant as to a respondent in a university's adjudication of a sexual assault claim.

The Defendant-Appellees' terse discussion of this point is telling. Beyond claiming that Gash fails to cite any authority in support of his position (which is false) Defendant-Appellees argue that Gash's advisor was permitted to conduct the cross-examination on his behalf, which is in line with the requirements of Title IX and therefore, there was no implication that this removal decision was gender based. (Appellee Brief, p. 15). First, the 2020 Title IX Regulations' requirement that cross-examination be conducted at a live hearing, in real time by the party's advisor, does not permit this cross-examination to take place outside of the presence of the parties. To the contrary, RFU's removal of Gash from the hearing violated the 2020 Title IX Regulations which instruct that the parties are entitled to a live hearing with cross-

examination, during which they must be able to both *see and hear* the testimony of the parties and witnesses. *See* 34 CFR §106.45 (b)(6)(i). This mandate is further confirmed by the 2020 Title IX Regulations' provisions concerning the use of technology during the hearing, which also presume that the parties have a right to be present during the questioning of the parties and witnesses. *See, e.g.,* 34 CFR §106.45 (b)(6)(i) ("[a]t the request of either party, the recipient must provide for the live hearing to occur with the parties located in separate rooms with technology enabling the decision-maker(s) and parties to *simultaneously see and hear* the party or the witness answering questions"; "[l]ive hearings pursuant to this paragraph may be conducted with all parties physically present in the same geographic location or, at the recipient's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually, with technology enabling participants simultaneously *to see and hear each other*") (emphasis supplied). The presence of a party's advisor, in lieu of the party himself, is not sufficient to satisfy this right.

Second, it is imperative that an accused be able to observe the cross-examination of adverse witnesses in real time, along with his advisor. This was evident from the hearing panel's decision to credit information provided by Witness R.G. during the hearing, which was offered outside of the presence of Gash. (A 53-54). Gash was unable to test the credibility of this witness, which the hearing panel ultimately relied upon to find a non-existent "pattern of behavior." (A 53-54) The exclusion of Gash during this testimony deprived him of the ability to offer additional questions for this

witness to his advisor in real time, demonstrating the significance of allowing parties to both see and hear the testimony. (A 54).

Based on the foregoing, RFU violated not only the 2020 Title IX Regulations when it deprived Gash of the ability to observe the witness testimony, but also acted in a gender-biased manner given the severely disproportionate impact the removal from the hearing had on Gash, the male accused, as compared to Roe.

### c) The Additional Procedural Errors Described in the Amended Complaint Further Support a Plausible Title IX Claim.

The additional procedural errors described in the Amended Complaint and discussed in Gash's Opening Brief establish a plausible discrimination claim. Defendant-Appellees downplay the clear procedural irregularities that permeated RFU's process, arguing that "so long as some manner of investigation is conducted, deficiencies in that investigation do not constitute deliberate indifference in a manner that would violate Title IX." (Appellee Brief, p. 16). The cases cited by Defendant-Appellees do not stand for this proposition, nor are they pertinent to the instant matter. The court in *Frederick v. Simpson College* examined whether a college acted with deliberate indifference in responding to a sexual harassment complaint, a theory that Gash did not advance as part of his Title IX claim. *Frederick v. Simpson College,* 149 F. Supp. 2d 826, 836 (S.D. Iowa 2001). The court in *Waters v. Metro State University* granted summary judgment to the university on the plaintiff's Title IX claim on the grounds that the plaintiff could not establish the university responded to actual knowledge of harassment with deliberate indifference. *Waters v. Metro. State Univ.,* 91 F. Supp. 2d 1287, 1292 (D. Minn. 2000), *aff'd,* 52 F. App'x 1 (8th Cir.

2002). Similarly, the Fifth Circuit in *I.F. v. Lewisville Indep. Sch. Dist.* upheld the district court's granting of summary judgment to the school district, finding that it did not act with deliberate indifference in responding to a sexual harassment complaint. *I.F. v. Lewisville Indep. Sch. Dist.,* 915 F.3d 360, 373 (5th Cir. 2019). None of the foregoing supports the proposition that *any* manner of investigation is sufficient to avoid Title IX liability. At minimum, RFU was required to abide by the guidelines set forth in the 2020 Title IX Regulations, which it failed to do. *See* 34 CFR §106.45 (b).

Defendant-Appellees excuse the Investigator's biased statement in the report that "[Roe] filed a Title IX complaint ***because she was sexually assaulted*** by [Gash]." (A 48-49), citing the provision of the 2020 Title IX Regulations which permits an investigator to include recommended findings or conclusions in their report. (Appellee Brief, p. 17). However, the 2020 Title IX Regulations also require that "any individual designated by a recipient as a Title IX Coordinator, investigator, decision-maker…not have a conflict of interest or bias for or against complainants or respondents generally…" (34 CFR §106.45(b)(1)(iii)); "[i]nclude a presumption that the respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process" (34 CFR §106.45(b)(1)(iv)); and to "[c]reate an investigative report that fairly summarizes relevant evidence." 34 CFR §106.45(b)(5)(vii).

Defendant-Appellees next attempt to justify the hearing panel's restriction on certain questions posed by Gash's advisor during the hearing as being unrelated to

gender. (Appellee Brief, p. 17). However, the questions that Gash's advisor was prohibited from asking Roe were directly relevant to Roe's complaint which included allegations of unwanted verbal and physical conduct and touching, aggressive pushing, holding down, and consensual sexual intercourse. (A 42-43, ¶ 85). In exploring these allegations and Roe's credibility, Gash's advisor attempted to question Roe about whether she, as a trained member of the US Army, tried to physically restrain Plaintiff during their encounter or protect herself from him (A 50, ¶ 138); sought to question her about her claims that Gash performed oral sex on her against her will (A 51, ¶ 140); and attempted to ask Roe about the details regarding the sexual activity between Gash and Roe (A 51, ¶ 143). In response, the hearing panel deemed such questions irrelevant or considered them as having already been addressed by Roe in her opening statement and thus instructed Gash's advisor to move on. (A 50-51, ¶¶ 139-143). Prohibiting one's advisor from asking questions that are clearly relevant to the underlying issues can be explained by gender bias.

Defendant-Appellees take the position that the procedural arguments identified by Gash do not rise beyond the level of conclusory statements. (Appellee Brief, p. 16). Particularly notable however is the number of critical procedural errors identified in the Amended Complaint which Defendant-Appellees omit from their discussion when arguing that Gash does not plausibly allege a gender bias claim. These include:

1) RFU wrongly found Gash responsible for a sexual assault. The evidence revealed that: (i) Roe never raised her voice before or during the alleged sexual encounter with Gash; (ii) Roe, who is a trained member of the US

Army, did nothing to stop Gash's alleged sexual assault despite having the opportunity to do so; (iii) Roe stated that after the initial sexual activity, Gash left her bedroom to go to the bathroom and she did not make any attempt to lock her bedroom door while he was in the bathroom, which she could have done if she was uncomfortable; (iv) Roe did not inform either of her roommates, who were both in close range, that she needed help while Gash was using the bathroom; (v) Roe stated that she engaged in the "69 position" with Gash, and positioned herself on top; (vi) Roe admitted that the 69 position required mutual participation and Gash did not force her into that position; (vii) Roe admitted that Gash rolled over so that she could get on top of him to perform oral sex on him; (viii) Roe admitted that Gash went downstairs when she told him that he had to go sleep downstairs; (ix) Roe texted Gash the next morning to ask if he got home safely; and (x) Roe admitted that she did not suffer any injuries as a result of the alleged assault. (A 40-42, 60-61).

2) RFU inappropriately ascribed the obligation to obtain consent from his partner to Gash, because he was the male, despite that he was indisputably severely intoxicated on the relevant evening. (A 52-53). Under RFU's definition of consent, Gash would not have been able to consent to sexual activity with Roe due to his incapacitation level. (A 52-53). That Gash was still deemed the party responsible for obtaining consent, demonstrated the

hearing panel's gender-biased belief about the role of men and women in sexual encounters.

3) Title IX Director Allena Barbato acted in a gender-biased manner when she stepped outside of the scope of her role to prevent Gash from withdrawing from RFU before a disciplinary sanction could be imposed (A 43-44) and accused Gash's advisor of attempting to circumvent the disciplinary process in front of the hearing panel. (A 47-48).

4) Investigator Kind-Keppel likewise exhibited gender bias against Gash which was apparent through the manner in which she drafted her report. Specifically, Kind-Keppel overlooked evidence tending to dispute Roe's credibility and failed to ask Roe any probing questions that went to the merits of her account. (A 40, 48-49).

5) The hearing panel also committed procedural errors which raise a plausible inference of discrimination on the basis of sex, including: (i) the panel failed to conduct an objective evaluation of all relevant evidence; (ii) engaged in decision-making which benefited Roe and harmed Doe; (iii) improperly permitted irrelevant character evidence favoring Roe; and (iv) curtailed Gash's advisor's cross-examination. (A 49-52).

While overlooking this plethora of procedural errors, all of which call into question the impartiality of the proceeding, Defendant-Appellees submit that none of the foregoing show that gender bias was the motivating factor for the University's actions. However, Gash's Amended Complaint goes well beyond merely identifying

mistakes or imperfections in the process. He identifies specific, inexplicable, prejudicial, and questionable decision-making on the part of RFU all of which, in the aggregate, raise a plausible inference of sex discrimination.

Finally, Defendant-Appellees allege that directing an advisor to refrain from asking certain questions during a hearing does not "per se constitute an instance of sex-based discrimination" (Appellee Brief, p. 17); however, this is not the applicable standard at the motion to dismiss stage.

While Defendant-Appellees attempt to explain away each of RFU's procedural errors as non-gender based, at the motion to dismiss stage, the Court must construe the Amended Complaint in the light most favorable to Gash, and draw all reasonable inferences in his favor, when asking whether, "the alleged facts, if true, raise a plausible inference that the university discriminated against [the plaintiff] 'on the basis of sex?'" *Purdue Univ.*, 928 F.3d at 667–68. The answer to this inquiry should be in the affirmative.

### d) *Doe v. Samford University* is Inapposite.

The District Court erred in relying on *Doe v. Samford University* for two reasons. First, Defendant-Appellees are mistaken in suggesting that the Eleventh Circuit merely clarified the Seventh Circuit's Title IX pleading standard when replacing the phrase "plausible inference" with "reasonable inference." *See* Appellee Brief, p. 18; *Doe v. Samford Univ.*, 29 F.4th 675 (11th Cir. 2022). Indeed, the Eleventh Circuit itself in *Doe v. Rollins College* acknowledged that it had revised the standard, explaining: "Because [t]he Seventh Circuit's test hew[ed] more closely to the text of

the statute and binding precedent than ... *Yusuf*, we agreed with that approach in *Samford University*, **albeit with one modification**. Namely, rather than asking whether the facts alleged by the plaintiff raise a *plausible* inference, we determined that the inquiry ought to be whether the facts, if true, permit a *reasonable* inference of a Title IX violation." *Doe v. Rollins Coll.,* 77 F.4th 1340, 1351 (11th Cir. 2023) (emphasis supplied) (internal citations and quotations omitted). Had the Eleventh Circuit intended to give these terms the same meaning, it would not have seen a reason to expressly modify the language of the pleading standard. Regardless of which standard is applied however, Gash provides sufficient evidence in his Amended Complaint to raise either a plausible or reasonable inference of gender discrimination, sufficient to warrant a denial of RFU's motion to dismiss.

Second, the District Court further erred in relying on *Doe v. Samford University* for the proposition that even if the conduct Gash attributes to RFU was erroneous, there are other lawful explanations such as "incompetence, impatience, or pro-complainant bias" which are equally plausible. (SA 12). Importantly, the court's task on a motion to dismiss is to presume the truth of the factual allegations, draw all reasonable inferences in the plaintiff's favor, and determine only whether such presumed facts and inferences make the claims "plausible"—*not* "convincing", or even "likely." The court does not engage in fact-finding. *See Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). *See also Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930, 936 (9th Cir. 2022) ("[D]iscrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to

proceed."); *Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022) (same); *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 579 (8th Cir. 2021) (same); *Doe v. Baum,* 903 F.3d 575, 587 (6th Cir. 2018) ([A]lternative explanations [for the University's conduct] are not fatal to [Plaintiff]'s ability to survive a Rule 12(b)(6) motion."); *Purdue Univ.*, 928 F.3d at 670 ("To be sure, [plaintiff] may face problems of proof, and the factfinder might not buy the inferences that he's selling. But his claim should have made it past the pleading stage."). *See also In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1340 (Fed. Cir. 2012) ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences [to dismiss a complaint,] as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."); *Smith v. Healthcare Auth. for Baptist Health*, 2:20-CV-887-MHT, 2022 WL 857036, at *3 (M.D. Ala. Mar. 22, 2022) (declining to dismiss discrimination complaint despite defendant's purported non-discriminatory explanation for its conduct). *Cf. Doe v. Univ. of Denver*, 1 F.4th 822, 836 (10th Cir. 2021) (declining to decide whether defendant's conduct was motivated by anti-male bias or merely anti-respondent bias, even at the summary judgment stage, as "it should be up to a jury to determine whether the school's bias was based on a protected trait or merely a non-protected trait that breaks down across gender lines").

Indeed, the Supreme Court long ago recognized the inherent difficulty of proving a defendant's state of mind in discrimination cases, when it created the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). Recognizing that discrimination plaintiffs are unlikely to possess direct evidence of defendant's state of mind—particularly *pre-discovery*—a district court may not simply declare that some potential, *unproven* non-discriminatory explanation for the defendant's misconduct is more believable than gender-bias and that as a result, gender bias is not plausible. A court's weighing of one proffered explanation over another, on a Rule 12 motion, equates to imposing a probability requirement at the pleading stage, which the Supreme Court has expressly prohibited. *Twombly*, 550 U.S. at 556. Based on the foregoing, the District Court improperly relied upon *Doe v. Samford* when dismissing Gash's Title IX claim.

## II. The Breach of Contract Claim.

### a) The Amended Complaint States a Claim for Breach of Contract.

Defendant-Appellees cite to *Doe v. Columbia College of Chicago,* 933 F.3d at 858, for the proposition that in order to find a breach of contact claim plausible, the court must find the university "did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff." (Appellee Brief, p. 8). Though this Court had not previously required a plaintiff challenging a disciplinary decision (such as a finding of sexual assault) to establish that the decision was "arbitrary, capricious, or made in bad faith", even if this Court were to confirm the foregoing as the governing standard, Plaintiff's allegations are sufficient to state a claim for breach of contract at the motion to dismiss stage. *See Bosch v. NorthShore Univ. Health Sys.*, 155 N.E.3d at 499 (reversing dismissal of breach of implied contract claim, holding "[i]f the facts show that Bosch cannot prove these claims and the case

boils down to whether the school personnel were correct or justified in their academic judgments, he will likely lose. But we obviously don't have those facts at the pleading stage, and we typically wait for them before deciding whether a student like Bosch has a case. Indeed, most of the case law in Illinois that upheld academic decisions came after some measure of discovery and evidence, rendered at trial or at least summary judgment.")

Here, as in *Bosch,* Gash is not asking the Court to substitute its academic judgment; rather, the Court is being asked to examine whether Defendant-Appellee's disparate treatment of Gash and its failure to follow its own policies state a claim for breach of contract. Defendant-Appellees' argument in favor of upholding the District Court's dismissal of Gash's breach of contract claim ignores a number of the violations detailed in the Amended Complaint and relies upon their unconvincing argument for upholding dismissal of the Title IX claim. (Appellee Brief, p. 7-8). Accepting Plaintiff's allegations as true, Plaintiff has stated a claim for breach of contract.

### b) RFU Committed Violations of its Policy.

Gash plausibly alleges a breach of contract claim in his Amended Complaint, as he identifies specific instances where RFU violated its own policies in a manner that suggested RFU acted arbitrarily or in bad faith.

As identified in Gash's moving brief, RFU violated its own policies when it arbitrarily extended its jurisdiction to conduct occurring off-campus (A 38-39, 45-47) in violation of its own policies as well as the 2020 Title IX Regulations, yet failed to afford Gash the procedural protections required by the 2020 Title IX Regulations

including when it deprived him of the opportunity to see and hear the witness testimony against him.

RFU further violated its contract with Gash when the various personnel involved in the investigation and adjudication deprived him of a fair and impartial proceeding. (A 45-55, 64-65). Title IX Director Barbato acted in bad faith when she prevented Gash from withdrawing from the University despite his having gained prior approval from his program director, the dean of the public health college, and the registrar's office. (A 43-44). Defendant-Appellees cite the Office for Civil Rights' 2014 Questions and Answers document which notes that a school is required to take action even if a respondent has left the school with no plans to return. (Appellee Brief, p. 23). Reliance upon this citation however makes clear that Defendant-Appellees misconstrue the issue. The contractual violation committed by RFU does not relate to the question of whether a school may continue to investigate a complaint when a respondent is no longer a member of the community. Here, RFU violated its contract because the Title IX Director stepped well outside of the bounds of her role to directly block Gash's previously approved withdrawal from RFU, ensuring he would proceed to a Title IX hearing and be found responsible. (A 44).

Moreover, for the reasons discussed at Section II(b) above and in Gash's opening brief, RFU failed to conduct a fair and impartial investigation which led to an erroneous finding of responsibility and a permanent expulsion. (A 25). Each of the foregoing violations demonstrates that RFU breached its contract with Gash and made decisions arbitrarily, capriciously, or in bad faith and lacked any rational basis.

Moreover, Gash was discriminated against on the basis of his sex, resulting in an arbitrary decision and dismissal. Accordingly, the Amended Complaint plausibly alleges a breach of contract claim, requiring reversal of the District Court's decision.

## CONCLUSION

For the reasons stated above, and those set forth in Plaintiff-Appellant's Opening Brief, this Court should: (i) reverse the District Court's granting of Defendant Rosalind Franklin University's Motion to Dismiss with respect to Gash's Title IX and breach of contract claims; (ii) remand the case to the District Court for discovery and trial on the Title IX and breach of contract claims; and (iii) grant such other and further relief as this Court deems just and proper.

**Dated:**     **February 1, 2024**

/s/ Tara J. Davis
Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

-and-

/s/ Elvis Gonzalez
Elvis Gonzalez, Esq. (Bar No. 6280115)
**ELVIS GONZALEZ, LTD.**
233 South Wacker Drive, Suite 6149
Chicago, Illinois 60606
(312) 558-9779
egonzalez@elvisgonzalezltd.com

*Attorneys for Plaintiff-Appellant Nicholas Gash*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) and Circuit Rule 32 because this document contains 6,242 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 12-point font.

**Dated:** **February 1, 2024**

*/s/ Tara J. Davis*
Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq. (Counsel of Record)
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

-and-

*/s/ Elvis Gonzalez*
Elvis Gonzalez, Esq. (Bar No. 6280115)
**ELVIS GONZALEZ, LTD.**
233 South Wacker Drive, Suite 6149
Chicago, Illinois 60606
(312) 558-9779
egonzalez@elvisgonzalezltd.com

*Attorneys for Plaintiff-Appellant*
*Nicholas Gash*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024, the Reply Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Tara J. Davis*
Tara J. Davis